**UNITED STATES DISTRICT COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

**UNITED STATES OF AMERICA,**             Affirmation

    -v-                                                                  # 07 Cr. 976 (WHP)

**JORGE RAMIREZ,**
                       **Defendant.**

---

      **Louis R. Aidala**, an attorney admitted to practice law in the courts of the State of New York and the Southern District of New York, affirms and says the following under the penalty of perjury.

      I am the attorney for **Jorge Ramirez**, the defendant herein, and am familiar with the facts of this case. I submit this Affirmation in support of the within pretrial motion for suppression of evidence seized during a warrantless search of defendant's apartment at the time of his arrest.

<u>**A. The Search**</u>

      Ramirez was arrested on September 20, 2007, by NYDETF agents who entered the basement apartment where he resided. Agents knocked on defendant's door with their guns drawn. When defendant opened the door and saw the guns pointed at him, he immediately closed it. Agents returned a short time later, and announced that they were the police and gained access on the pretext of investigating a 911 call about a woman screaming from the apartment.

      Agents entered the apartment and conducted a search of said apartment without first obtaining defendant's consent. They eventually seized a sealed, wrapped package, which, upon later being opened by the agents and field tested, was determined to be a quantity of cocaine. They also found and seized approximately $43,000 in cash, alleged drug paraphernalia, as well as some personal papers, a wallet, an address book, a calculator, and other <u>non-contraband</u> personal property, mainly from the bedroom of the apartment. Following the search and seizure, defendant was given a

1

Consent to Search Form and instructed to sign it, which he did.**¹**

At the time of the unlawful entry by the police defendant was in the apartment with a female friend who had just arrived to spend a few days with him, and who was preparing dinner at the time.

## B.  The Complaint and Investigation Report

In addition to the Fourth Amendment violation inherent in the warrantless entry and search of defendant's home in the absence of exigent circumstances, there are several discrepancies between the Complaint and the DEA Investigation Report which undercut the credibility and/or accuracy of the allegations in either or both of the documents.

The partial "Report of Investigation", DEA Form 6a, which was provided in Discovery, states that agents entered the apartment at approximately 9:15 p.m., and "requested consent to search" and that "Ramirez gave consent to search his basement apartment". (Exh. A-1, hereto).  It does not state what form the alleged consent took, *e.g.,* verbal, a nod, a shrug, *etc*.

The report further claims that when the agents entered the apartment they observed a bag containing a white powdery substance in plain view on a table in the bedroom, as well as a wrapped taped brick of suspected narcotics and drug paraphernalia in a bedroom closet.**²** It states that defendant was then placed under arrest, at approximately 9:20 p.m., and shortly thereafter signed

---

[1] It is hypothetically submitted that, even if an individual such as Ramirez "consented" to a search of his home in circumstances such as these, where several armed police officers entered the premises with their guns drawn, such "consent" would have to be deemed involuntary and a mere submission to authority. As such the alleged "consent" would be invalid.

[2] It is counsel's understanding that the apartment is entered through a front room consisting of a kitchen and dining table. The bedroom adjoins the front room through a doorway with a door in place and the closet, which also has a door, is behind the door to the bedroom.

a "Consent to Search Form".[3] Finally, the report states that a search of the apartment was conducted "at approximately 10:20 p.m." *Id.* This was <u>one hour</u> after agents entered the apartment and arrested defendant.

It should be noted that the aforesaid DEA Report is inconsistent with the Complaint in several relevant aspects. For example, ¶ "e" on p. 3 of the Complaint states that when agents entered the apartment defendant gave them "written consent to search the apartment", that they then searched the apartment and found drugs and drug paraphernalia, and "then placed Ramirez under arrest". (Exh. C, hereto). The Report, on the other hand, claims that upon the agents' entry into the apartment, they observed several items of contraband in plain view in various locations in the apartment, including a closet in the bedroom, that defendant was then placed under arrest; and "shortly after this" he was given a consent form to sign. Approximately one hour later, they conducted the search. (Exh. A-1). Thus, not only is the sequence of events different in the two documents, but the elapsed time appears to be different as well.

Paragraph "e" on p. 3 of the Complaint further states that approximately one kilogram of <u>cocaine</u> and one kilogram of <u>heroin</u> were found in the bedroom closet. (Exh. C). According to the DEA Report, however, the inventory of items seized from the apartment lists only "a black taped wrapped brick of suspected <u>cocaine</u>", and "suspected <u>heroin residue</u> found...around the toilet", and an <u>unidentified</u> "white powdery substance" of unspecified weight, contained in some plastic bags - all but one of which were found in a trash can. (Exh. A-2, hereto). Nothing resembling a packaged

---

[3] The "Consent to Search Form" <u>does not state the time</u> at which it was signed by defendant. (Exh. B).

kilogram of heroin is listed in the search inventory for the apartment.

Finally, with respect to the phantom kilogram of heroin, ¶ "f" on p. 3 of the Complaint states that the agent "field tested the substance that appeared to be heroin and it tested positive" for same. (Exh. C). As noted above, however, no kilogram of heroin is listed in the search inventory for the apartment. Clearly, therefore, there were gross misstatements in the Complaint about an alleged kilogram of heroin supposedly seized from the apartment, for the inventory of items seized from the apartment shows that there was no such kilogram of heroin allegedly seized from the apartment.

In addition to the contraband items seized during the unlawful search, several items of personal property, including a passport, and other personal papers, a calculator and other non-contraband items were also seized. It is requested that the government be directed to return to defendant all non-contraband items of personal property that were taken from his apartment.

**C. The Law**

It has long been established, as "a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable". Payton v. New York, 445 U.S. 573, 586 (1980), quoting Coolidge v. New Hampshire, 403 U.S. 443, 477- 478 (1971). "It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant." Agnello v. United States, 269 U.S. 20, 30 (1925); Taylor v. United States, 286 U.S. 1, 6 (1932). "Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified." Jones v. United States, 357 U.S. 493, 497- 498 (1958).

The warrantless entry and search of defendant's apartment violated the Fourth Amendment to

the US Constitution. Not only was there was no probable cause to believe that defendant had committed a crime or that evidence of a crime would be found in his apartment, but, even if there were probable cause, no exigent circumstances existed to justify the warrantless entry into the apartment, the ensuing search of said apartment and the arrest of the defendant. The evidence seized from defendant's apartment as a result of the unlawful entry and search be must therefore be suppressed.

According to the Complaint, the agents observed defendant and a female friend arrive at the building in a vehicle and speak with the co-defendant who was in front of the building in his own car. All three individuals entered the building and the co-defendant emerged some time later carrying a plastic bag and entered his car.

Agents followed the co-defendant when he drove away from the building and later stopped and searched his vehicle, where they found a package containing what appeared to be heroin. They then returned to defendant's building and began knocking on all the apartments in the building until they found defendant, and entered and searched his apartment.

Probable cause was lacking to justify a warrant for the entry and search of defendant's apartment, and the entry without same was improper. For one thing, there was no claim that the package containing the heroin which was found in Espinosa's car was the same as the plastic bag Espinosa was seen carrying when he left defendant's apartment building. Nor was there any claim that the agents were in a position to observe where any of the three individuals went upon entering the multi-dwelling building. Thus, there was no reason to believe that Espinosa had obtained the heroin from defendant's apartment - or from where in the building, or from whom - and, consequently, no probable cause existed to believe that drug or other evidence would be found at

said location.

Moreover, assuming, *arguendo,* that the agents had probable cause to believe that defendant had committed a crime and that evidence of same would be found in his home, that was still not sufficient to support the warrantless entry, search, and arrest. There was no "emergency or dangerous situation, described...as 'exigent circumstances', [to] justify [the] warrantless entry into [his] home for the purpose of either arrest or search". See, Payton v. New York, 445 U.S. at 583.

Certainly, defendant had no way of knowing of Espinosa's arrest, which might somehow have led him to destroy or otherwise dispose of evidence. Nor was there anything to suggest that defendant was about to leave his apartment. It was, in fact, late in the evening, after 9 p.m., making it likely that he was home for the night. Thus, even assuming, *arguendo,* that the events of that evening amounted to probable cause, no exigency existed and the agents had ample time to apply for a warrant.

It is submitted, however, that the police lacked any legal right to enter defendant's apartment, and would have been unable to secure a search warrant for said apartment had they applied for one, under the circumstances of this case. Thus, their entry and search of the apartment violated defendant's Fourth Amendment rights, and all of the evidence seized must be suppressed. See, also, *e.g.,* Wong Sun v. United States, 371 U.S. 471 (l963).

**Wherefore**, it is submitted that the relief sought herein be granted in every respect and that the evidence seized from defendant's apartment as a result of the unlawful entry and search must be suppressed. Alternatively, an evidentiary hearing should be granted.

Dated: New York, NY
        February 8, 2008

                                        Respectfully submitted,


                                        Louis R. Aidala